UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JANET GRAY and PAUL GRAY,
Individually and as assignees of
McCORMICK INTERNATIONAL, INC.
d/b/a McCORMICK WATER-SKI SCHOOL;
JAMES E. McCORMICK; and TATIANA NIEBUHR,

     Plaintiffs,

v.

ACE AMERICAN INSURANCE COMPANY,

     Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COME NOW the Plaintiffs, JANET GRAY and PAUL GRAY, by and through their undersigned counsel, and hereby files their Complaint and Demand for Jury Trial against the Defendant, Ace American Insurance Company ("Ace"), stating as follows:

### I. Allegations Common to All Counts

1.    This is an action for damages in excess of Seventy Five Thousand Dollars ($75,000.00) exclusive of interest, costs and attorney's fees.

2.    At all times relevant hereto, Ace was and is a Pennsylvania corporation with its principal place of business in Pennsylvania.

3.    At all times relevant hereto, Ace conducted and continues to conduct business as an insurance company in Hillsborough County, Florida.

4.    Janet and Paul Gray are citizens of a foreign nation and do not reside within the United States of America.

5.      McCormick International Inc. is a Florida corporation with its principal place of business in Hillsborough County, Florida, doing business as McCormick Water-Ski School.

6.      James E. McCormick is a resident of the state of Florida.

7.      Tatiana Niebuhr is a resident of the state of Florida.

8.      Ace issued a Ski-Safe Boat Insurance policy, number SS0679606, to James E. McCormick with effective coverage dates of October 23, 2003 through October 23, 2004 ("the Policy").

9.      The Policy was delivered to James E. McCormick in Tampa, Hillsborough County, Florida.

10.     A true and correct copy of the Policy is attached hereto and incorporated herein as Exhibit "A."

11.     Pursuant to the terms of the Policy, "USA Water Ski and its Member Clubs" was named as an "Additional Insured."

12.     USA Water Ski is the national governing body of organized water skiing in the United States.

13.     An affiliate of USA Water Ski is the American Water Ski Association ("AWSA").

14.     McCormick Water Ski School was, at all relevant times hereto, a Member Club of USA Water Ski.

15.     At all times relevant, Janet Gray was a legally blind water-skier, who participated in USA Water Ski and AWSA events.

16.     On March 29, 2004, McCormick Water Ski School was providing instruction and practice time to Janet Gray in preparation for an AWSA event.

17.     On March 29, 2004, as part of a club activity, Janet Gray was practicing for an AWSA event.

18.     The March 29, 2004 practice was a "Covered Practice Session" as that term is defined by the AWSA.

19.     During the March 29, 2004 practice, Tatiana Niebuhr operated a ski boat listed in the Policy.

20.     The ski boat operated by Tatiana Niebuhr was a 2004 Mastercraft, which was on loan to McCormick Water Ski School.

21.     The 2004 Mastercraft was routinely used by McCormick Water Ski School to tow its students and clients in club activities.

22.     During the March 29, 2004 practice, Tatiana Niebuhr operated the 2004 Mastercraft with the permission and consent of McCormick Water Ski School and James E. McCormick.

23.     During the March 29, 2004 practice, Tatiana Niebuhr acted  as an agent of McCormick Water Ski School.

24.     During the March 29, 2004 practice, Tatiana Niebuhr negligently failed to provide Janet Gray with the appropriate audible cues that are generally provided to sightless water-skiers.

25.     During the March 29, 2004 practice, Tatiana Niebuhr operated the 2004 Mastercraft in a negligent manner.

26.     As a result of her negligence during the March 29, 2004 practice, Tatiana Niebuhr towed Janet Gray into the side of a jump ramp at considerable speed, causing Janet Gray to incur significant bodily injury.

27.     Janet Gray underwent and considers to undergo significant medical treatment for the injuries she incurred on March 29, 2004.

28.     Janet Gray's husband, Paul Gray, has suffered harm as the result of the physical injuries incurred by Janet Gray on March 29, 2004.

29.     On March 3, 2005, Janet and Paul Gray filed a lawsuit against James E. McCormick, McCormick Water Ski School, and Tatiana Niebuhr in the Circuit Court of the 13th Judicial Circuit in and for Hillsborough County, Florida, Case No. 05-1962 ("the Underlying Litigation").

30.     At the time of the March 29, 2004 accident, the Policy was in full force and effect.

31.     James E. McCormick, McCormick Water Ski School and Tatiana Niebuhr ("the Underlying Defendants"), reported the claim and lawsuit to Ace and requested that Ace provide them with defense and indemnification under the Policy.

32.     Based on the allegations in the original Complaint, Ace denied coverage for the claims asserted against the Underlying Defendants by the Grays.

33.     After conducting discovery in the Underlying Litigation, the Grays filed an Amended Complaint against the Underlying Defendants on July 11, 2007.

34.     A true and correct copy of the Amended Complaint filed in the Underlying Litigation is attached hereto and incorporated herein as Exhibit "B."

35.     The Underlying Defendants tendered the Amended Complaint to Ace for defense and indemnification.

36.     On August 1, 2007, Ace denied coverage under the Policy for the allegations against the Underlying Defendants in the Amended Complaint.

37.     A true and correct copy of the denial letter of August 1, 2007 is attached hereto and incorporated herein as Exhibit "C."

38.     Ace's denial of coverage for the allegations in the original Complaint, against the Underlying Defendants, was a wrongful denial that constituted a breach of the Policy.

39.     Ace's denial of coverage for the allegations in the Amended Complaint, against the Underlying Defendants, was a wrongful denial that constituted a breach of the Policy.

40.     As a result of Ace's wrongful denial of coverage, the Underlying Defendants were required to hire and maintain their own defense counsel for the Underlying Litigation, at their own expense.

41.     As a result of Ace's wrongful denial of coverage, the Underlying Defendants were left to their own devices to protect themselves in the best way possible.

42.     Having received no defense or indemnification from Ace, the Underlying Defendants entered into an Assignment, Settlement Agreement and Covenant Not to Execute ("Assignment") with the Grays in December 2010.

43.     A true and correct copy of the Assignment is attached hereto and incorporated herein as a portion of Exhibit "D."

44.     In accordance with the terms of the Assignment, a Consent Judgment was entered against the Underlying Defendants and for the Grays, by the Circuit Court of the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida,

45.     The Consent Judgment is in the amount of $3,400,000.00 (Three Million Four Hundred Thousand Dollars and no Cents) for Janet Gray and $100,000.00 (One Hundred Thousand Dollars and no Cents) for Paul Gray.

46.     A true and correct copy of the Consent Judgment is attached hereto and incorporated herein as Exhibit "D."

47.     The Underlying Defendants settled the Underlying Litigation for a reasonable amount of money in order to prevent even greater personal exposure should the matter go to trial.

48.     The Consent Judgment remains unpaid.

## COUNT I – BREACH OF CONTRACT

Plaintiffs reallege and incorporate the averments of paragraphs 1 through 48, as though fully restated herein.

49.     Pursuant to the terms of the Assignment, Plaintiffs have the right to bring suit against Ace standing in the shoes of the Underlying Defendants.

50.     The Underlying Defendants were all Covered Persons under the Policy, relative to the accident in which Janet Gray was injured.

51.     The Underlying Defendants provided Ace with appropriate notice of the claims brought against them by the Grays and provided Ace with copies of the original Complaint and the Amended Complaint in a timely manner.

52.     Pursuant to the terms of the Policy, the accident in which Janet Gray was injured was a covered loss or occurrence.

53.     The accident in which Janet Gray was injured occurred during a club activity.

54.     The accident in which Janet Gray was injured occurred during a Covered Practice Session, as defined by the AWSA.

55.     Defendant's denial of coverage was based on an exclusion that did not apply, as Defendant failed to recognize or acknowledge the "Ski-Safe Endorsement" during its coverage determination.

56.     Defendant had a duty to provide the Underlying Defendants with a defense to the Underlying Litigation, to settle within policy limits when it had the opportunity to do so, and to indemnify the Underlying Defendants for sums which they became legally obligated to pay as a result of the operation of the 2004 Mastercraft ski boat.

57.     Defendant breached its duties to the Underlying Defendants by failing and refusing to defend, settle and indemnify.

58.     As a direct consequence of Defendant's breach of the Policy, the Underlying Defendants have incurred damages which include the amount of the Consent Judgment and the costs and attorneys fees expended in the Underlying Litigation.

59.     Plaintiffs, as assignees of the Underlying Defendants, are entitled to recover the damages incurred by the Underlying Defendants as a result of Ace's breach.

60.     Plaintiffs, as assignees of the Underlying Defendants, had to retain counsel in order to pursue this action against Ace.

61.     As assignees of the insureds under the Policy, Plaintiffs would be entitled to recover their attorneys fees pursuant to §627.428, Florida Statutes, if they were to prevail in this action.

WHEREFORE, the Plaintiffs, Janet Gray and Paul Gray, as assignees of James E. McCormick, McCormick International, Inc. d/b/a McCormick Water-Ski School and Tatiana Niebuhr, demand judgment against the Defendant, Ace American Insurance Company, for

damages including the policy limit of $500,000.00, the cost of defense for the Underlying

Litigation, pre-judgment and post-judgment interest and attorneys fees.

## COUNT II – PETITION FOR JUDICIAL DECLARATION

Plaintiffs reallege and incorporate the averments of paragraphs 1 through 48, as though

fully restated herein.

62.    As judgment creditors of the insureds under the Policy, Plaintiffs have an interest

in determining the rights and obligations of the parties to the insurance contract.

63.    As assignees of the insured under the Policy, Plaintiffs have an interest in

determining the rights and obligations of the parties to the insurance contract.

64.    The Underlying Defendants and the Grays (collectively "the Petitioners") are

unified in the belief that coverage for the accident exists under the Policy, based on the

allegations in the Amended Complaint of the Underlying Litigation.

65.    Defendant, Ace, has taken the position that coverage for the accident does not

exist under the Policy, based on the allegations in the Amended Complaint of the Underlying

Litigation.

66.    A bona fide dispute exists between the Grays and Underlying Defendants on the

one hand, and Ace on the other hand, relative to whether coverage for the accident exists

under the Policy.

67.    This Court is authorized by Chapter 86, Florida Statutes, to make a judicial

declaration of the rights and obligations of the parties under the Policy.

68.     Plaintiffs, as assignees of the Underlying Defendants, had to retain counsel in order to pursue this action against Ace.

69.     As assignees of the insureds under the Policy, Plaintiffs would be entitled to recover their attorneys fees pursuant to §627.428, Florida Statutes, if they were to prevail in this action.

70.     The Grays, individually and as assignees of the Underlying Defendants, seek a judicial declaration stating as follows:

    A.     That the allegations of the Amended Complaint against the Underlying Defendants, by the Grays, give rise to a duty to defend under the terms of the Policy;

    B.     That the allegations of the Amended Complaint against the Underlying Defendants, by the Grays, give rise to a duty to indemnify under the terms of the Policy;

    C.     That the Grays, as assignees of the Underlying Defendants, are entitled to an award of the attorneys fees and costs incurred in obtaining this judicial declaration.

WHEREFORE, the Plaintiffs, Janet Gray and Paul Gray, individually and as assignees of James E. McCormick, McCormick International, Inc. d/b/a McCormick Water-Ski School and Tatiana Niebuhr, request a judicial declaration as stated herein, along with an award of their costs and attorneys fees incurred in obtaining this judicial declaration.

## COUNT III – COMMON LAW BAD FAITH

Plaintiffs hereby adopt and incorporate the allegations of paragraphs 1 through 48, as though fully restated herein.

71.     Ace knowingly misrepresented the terms and conditions of the Policy by informing the Underlying Defendants that coverage was excluded because the operation of the 2004 Mastercraft on the date of the accident constituted a "commercial activity," despite the existence of the Ski-Safe Endorsement that stated otherwise.

72.     Ace knowingly and intentionally misrepresented the terms of coverage and attempted to deceive the Underlying Defendants, to wit:  upon being asked for a copy of the Policy by counsel for the Underlying Defendants, Ace knowingly provided a copy of the Policy that did not contain the Ski-Safe Endorsement, which was the portion of the Policy that invalidated Ace's coverage position.

73.     Ace had a duty to attempt in good faith to settle the Grays' claims against the Underlying Defendants when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward the Underlying Defendants.

74.     Ace breached this duty by wrongfully denying coverage for the claims asserted in the Underlying Litigation, despite Ace's knowledge of the provisions of the Policy that would extend coverage.

75.     Ace had a duty to attempt in good faith to settle the Grays' claims against the Underlying Defendants when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward the Grays.

76.     Ace breached this duty by wrongfully denying coverage for the claims asserted in the Underlying Litigation, despite Ace's knowledge of the provisions of the Policy that would extend coverage.

77.     Ace had a duty to provide a defense to the Underlying Defendants in the Underlying Litigation, based on the allegations of the Amended Complaint.

78.    Ace breached this duty by wrongfully denying coverage for the claims asserted in the Underlying Litigation, despite Ace's knowledge of the provisions of the Policy that would extend coverage.

79.    Ace had a duty to negotiate in good faith with the Grays under all of the circumstances of the claims in the Underlying Litigation.

80.    Ace breached this duty by wrongfully denying coverage for the claims asserted in the Underlying Litigation, despite Ace's knowledge of the provisions of the Policy that would extend coverage.

81.    Ace had a duty to make a full and complete investigation of the claim before rendering a coverage decision.

82.    Ace breached this duty by wrongfully denying coverage without first making an adequate investigation of the circumstances of the claims asserted in the Underlying Litigation and without first making a fair and reasonable assessment of the applicability of all Policy provisions.

83.    Ace had a duty to approach investigation and settlement of the Grays' claims against the Underlying Defendants in a manner that was not prejudicial to the Underlying Defendants.

84.    Ace breached this duty by wrongfully denying coverage without first making an adequate investigation of the circumstances of the claims asserted in the Underlying Litigation and without first making a fair and reasonable assessment of the applicability of all Policy provisions.

85.    Ace had a duty to advise the Underlying Defendants of their claim rights in accordance with the terms and conditions of the Policy.

86.     Ace breached this duty by wrongfully providing the Underlying Defendants with misinformation regarding their rights under the Policy; by knowingly and intentionally omitting any reference to the Ski-Safe Endorsement in its denial letter of August 1, 2007; and by knowingly and intentionally withholding the Ski-Safe Endorsement when providing a copy of the Policy to the Underlying Defendants' counsel on November 17, 2008.

87.     Ace had a duty to assign the Grays' claim to an adjuster who was competent to adjust the claim.

88.     Ace breached this duty by assigning an adjuster to make a coverage determination when that person was unfamiliar with the terms of the Policy, was unable to ascertain from reviewing the Policy that the Ski-Safe Endorsement applied, and/or was incapable of determining the applicability of coverage under the facts stated in the pleadings of the Underlying Litigation.

89.     Ace had a duty to refrain from misrepresenting the terms and conditions of the Policy to the Underlying Defendants and the Grays.

90.     Ace breached this duty by wrongfully providing the Underlying Defendants with misinformation regarding their rights under the Policy; by knowingly and intentionally omitting any reference to the Ski-Safe Endorsement in its denial letter of August 1, 2007; and by knowingly and intentionally withholding the Ski-Safe Endorsement when providing a copy of the Policy to the Underlying Defendants' counsel on November 17, 2008.

91.     Ace had a duty to provide a complete and accurate copy of the Policy to the Underlying Defendants upon their request.

92.     Ace breached this duty by wrongfully providing the Underlying Defendants with misinformation regarding their rights under the Policy; by knowingly and intentionally

omitting any reference to the Ski-Safe Endorsement in its denial letter of August 1, 2007; and by knowingly and intentionally withholding the Ski-Safe Endorsement when providing a copy of the Policy to the Underlying Defendants' counsel on November 17, 2008.

93.     As a direct result of Ace's breach of its fiduciary obligations to the Underlying Defendants, the Underlying Defendants were left to their own devices to protect themselves.

94.     As a direct result of Ace's breach of its fiduciary obligations to the Underlying Defendants, the Underlying Defendants had to consent to a judgment that far exceeds the Policy limits in order to avoid an even larger personal exposure.

95.     As a direct result of Ace's bad faith conduct, the judgment against the Underlying Defendants remains unpaid.

96.     The Underlying Defendants and the Grays were materially damaged by Ace's breach of its duty of good faith.

97.     Ace's violations of its duty of good faith constituted intentional misconduct or gross negligence.

98.     Ace violated its duty of good faith with actual knowledge of the wrongfulness of its conduct and with actual knowledge that there was a high probability of injury or damage to the Underlying Defendants and the Grays, and despite that knowledge, Ace intentionally pursued that course of conduct, resulting in injury or harm to the Underlying Defendants and the Grays.

99.     Ace's violations of its duty of good faith were so reckless and wanting in care that it constituted a conscious disregard for the life and safety of Mrs. Gray and to the rights of the Underlying Defendants.

100.    The Underlying Defendants and the Grays have satisfied all conditions precedent to filing of this lawsuit, or such conditions have been waived by Ace.

101.    Plaintiffs, as assignees of the Underlying Defendants, had to retain counsel in order to pursue this action against Ace.

102.    As assignees of the insureds under the Policy, Plaintiffs would be entitled to recover their attorneys fees pursuant to §627.428, Florida Statutes, if they were to prevail in this action.

WHEREFORE, Plaintiffs respectfully request entry of a judgment in their favor, and against Ace, for all damages, inclusive of the full judgment amount from the Underlying Litigation, attorneys fees, costs, pre-judgment interest, post-judgment interest, and punitive damages arising from Ace's bad faith conduct, as set forth herein.

<u>Jury Demand</u>

Plaintiffs demand a trial by jury as to all matters that are so triable as a matter of right.

LEE W. MARCUS, ESQ.
Florida Bar No. 967076
MARCUS & MYERS, P.A.
1515 Park Center Drive, Suite 2G
Orlando, FL 32835
Phone: 407-447-2550
Fax:    407-447-2551
lmarcus@marcusmyerslaw.com
Counsel for the Plaintiffs